**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

|  |  |
|---|---|
| AERY AVIATION, LLC, <br><br> Plaintiff, <br><br> v. <br><br> TALENTSCALE, INC., <br> and <br><br> DOUGLAS POLDRUGO, <br><br> Defendants. | Case No. 4:25-cv-00173-RBS-LRL |

**<u>DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND</u>**

Defendants Talentscale, Inc. ("Talentscale") and Douglas Poldrugo ("Poldrugo," and, collectively, "Defendants") respectfully oppose Plaintiff Aery Aviation, LLC's ("Aery") Motion to Remand (ECF Nos. 7 and 8). For the reasons discussed herein and in Defendants' Motion to Dismiss (ECF Nos. 5-6), which is incorporated by reference herein, the Motion to Remand should be denied.

**<u>INTRODUCTION</u>**

This action is a hornbook SLAPP suit by a judgment debtor who refuses to pay any portion of the $1.2 million federal judgment owed to its creditor, Defendant Talentscale. Rather than paying the judgment, which Aery is capable of doing, Aery has sought instead to run up the parties' costs with this meritless lawsuit. Aery did not only sue its judgment creditor. As a fraudulent joinder, Aery also sued its judgment-creditor's principal, Poldrugo, who resides in Florida and has nothing to do with the Commonwealth of Virginia.

Fraudulent joinder is established when "there is no possibility that the plaintiff would be able to establish a cause of action against the non-diverse defendant in state court." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999). Plaintiff has no possibility of recovering against Poldrugo for at least the following reasons:

1. There is no personal jurisdiction over Poldrugo for purportedly making statements in Florida to another Florida party.

2. All conduct giving rise to this SLAPP suit occurred in Florida;

3. The challenged statements are absolutely privileged;

4. The claims lack substantive merit;

5. Aery's own litigation positions directly contradict its current theory of jurisdiction; and

6. The lawsuit serves an improper, retaliatory purpose characteristic of a SLAPP suit.

Defendants' Motion to Dismiss, if granted as to Poldrugo, will result in undisputed complete diversity and render this Motion to Remand moot. Defendants respectfully ask the Court to consider their Motion to Dismiss (ECF Nos. 5-6) *first* because if the Court grants the Motion to Dismiss with respect to Poldrugo, remand will become unnecessary.

### **ARGUMENT**

**I.    THE VIRGINIA ANTI-SLAPP STATUTE BARS THIS LAWSUIT AND PRECLUDES ANY POSSIBILITY OF RECOVERY.**

The Virginia legislature enacted its anti-SLAPP statute, Va. Code § 8.01-223.2, to deter frivolous lawsuits brought for the improper purpose of harassing individuals who exercise their First Amendment right to free speech. Section 8.01-223.2 provides a complete bar to liability for most statements made in good faith on matters of public concern, specifically, statements relating to any matter of political, social, or other legitimate concern to the community.

2

Against this statutory backdrop, Plaintiff's defamation claims fail because the statements at issue, namely allegations of "financial crime," being "destroyed financially," and the need to "do right by my family" constitute protected speech about business dealings and alleged wrongdoing. These statements fall squarely within the statute's protection. As set forth *infra*, at Section II.E., critically, Plaintiff's Verified Complaint contains no well-pled facts establishing actual malice, which Virginia law requires when a defendant makes statements on matters of public concern. *See Petrak v. Sawyers,* No. 0110-24-4, 2025 Va. App. LEXIS 655 (Oct. 21, 2025). In *Petrak*, the Court of Appeals defined actual malice as making a statement "'with knowledge that it was false or with reckless disregard'" of its falsity. *Id.* at *14-15. That court reversed the jury verdict on this point when the plaintiff failed to provide clear and convincing evidence that the defendant realized his statements were false or, basically, knew they were probably false and carried "a provably false or factual meaning, not an expression of opinion." *Id.* at *15. Accordingly, the court in *Petrak* found that actual malice could not be established. *Id.* Because the anti-SLAPP statute bars Plaintiff's claims as a matter of law, Plaintiff has no possibility of recovery against Poldrugo, and his joinder is therefore fraudulent.

## II. PLAINTIFF FRAUDULENTLY JOINED POLDRUGO BECAUSE NO POSSIBILITY OF RECOVERY EXISTS.

### A. Legal Standard for Fraudulent Joinder

The district court may disregard the citizenship of a non-diverse defendant if there is "no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999). This standard places a burden on the party asserting fraudulent joinder, but it does not preclude a finding of fraudulent joinder where controlling law forecloses any viable claim. *Id.*; *Trustees of Hackberry Baptist Church v. Womack*, 62 F. Supp. 3d 523, 528–29 (W.D. Va. 2014). Consistent with these

decisions, courts examine whether jurisdictional defects, absolute privileges, or other established rules of law leave the plaintiff with "no glimmer of hope" of recovery against the non-diverse defendant, and when they do, the court may treat that defendant as fraudulently joined. *Hackberry Baptist Church*, 62 F. Supp. 3d at 527 (citing *Mayes v. Rapoport*, 198 F.3d 457, 466 (4th Cir. 1999)).

### B. Virginia Courts Lack Personal Jurisdiction Over Poldrugo.

Aery has not, and cannot, establish personal jurisdiction over Poldrugo in Virginia.

### 1. The Undisputed Facts Establish the Absence of Jurisdiction.

The record is uncontested as to these facts:

- Poldrugo resides in Santa Rosa Beach, Florida and has resided there continuously since 2019 (Poldrugo Decl. ¶ 2 at ECF No. 5-1);

- Poldrugo has never resided in Virginia, owns no property in Virginia, maintains no office or business address in Virginia, and has never conducted business in Virginia in his individual capacity (*Id.* at ¶¶ 2-3);

- The challenged emails were sent from Florida to recipients located in Florida (*Id.* at ¶ 11);

- The recipient of the challenged emails, Cogent Bank, is a Florida state-chartered bank headquartered in Orlando, Florida (*Id.* at ¶ 9);

- The subject matter of the emails, enforcement of a federal judgment pending in Florida, involved matters within Florida's jurisdiction (*Id.* at ¶ 6);

- The communications concerned ongoing Florida federal litigation (*Id.* ¶ 6).

### 2. Aery's Own Prior Positions Establish the Jurisdictional Defect.

Aery itself has previously litigated this precise jurisdictional question and prevailed. In *Talentscale, Inc. v. Aery Aviation, LLC*, Case No. 2:23-cv-00238 (D. Nev.), Talentscale sued Aery in Nevada. Aery moved to dismiss the action for lack of personal jurisdiction in

Nevada, arguing that "there is only jurisdiction against us in Virginia." Case No. 2:23-cv-00238-CDS-NJK (D. Nev.), ECF No. 14 That motion was granted. (ECF No. 24, Order entered Apr. 12, 2023). After Talentscale obtained an arbitration award, which was reduced to a judgment, Aery and Cogent Bank proclaimed, in open court in Florida, that Virginia lacks personal jurisdiction over Cogent Bank, the very Florida-based financial institution at issue in the instant action. Specifically, in December 2024, Cogent's counsel stated, in open court:

> Cogent Bank is a state-chartered bank headquartered in Florida with locations only in Florida. Due process does not support permitting Talentscale to skip a step of domesticating a judgment in Florida before pursuing in that state a garnishment or other collection against Cogent Bank.

(*Talentscale, Inc. v. Aery Aviation, LLC*, Case No. 4:24-cv-33 (E.D. Va.), D.E. 27 at 5 (Dec. 2024)).

Talentscale honored this position by registering the judgment in Florida and pursuing enforcement exclusively there. (Case No. 5:25-mc-00001-TKW-MJF (N.D. Fla.), ECF No. 2, Jan. 13, 2025.) Aery now seeks to exploit the very principle it championed: that Florida parties and Florida conduct cannot be reached through jurisdiction in the Commonwealth of Virginia.

### 3. The *Calder* Effects Test Cannot Supply Jurisdiction Here.

Plaintiff's invocation of *Calder v. Jones*, 465 U.S. 783 (1984) is fundamentally misplaced. *Calder* involved a national publication distributed to California readers; the defendant's intentional conduct was directed at the state's readers and the defendant knew the substantial effect would be felt in that state. *Id.* at 789-90. Here, Poldrugo sent private emails to a single Florida bank, from Florida, concerning Florida litigation. (*Poldrugo*

5

*Decl.* ¶¶ 2-3, 9, 11.) The communications were not published in Virginia, not directed to Virginia, and not directed to Aery in its capacity as a Virginia entity.

As the United States Supreme Court later clarified in *Walden v. Fiore*, 571 U.S. 277, 285 (2014), "the plaintiff cannot be the only link between the defendant and the forum." *Id.* Virginia's connection to this dispute is solely that Plaintiff happens to be domiciled there, precisely the insufficient basis *Walden* rejected. The intended effects occurred in Florida (communications to Florida bank officials), the conduct occurred in Florida (emails sent from Poldrugo's Florida home), and the subject matter occurred in Florida (enforcement proceedings pending in Florida federal court). Accordingly, the *Calder* effects test cannot supply the minimum contacts necessary to establish personal jurisdiction over Poldrugo in Virginia, and Plaintiff has no possibility of recovery against him on this independent ground.

### 4. Personal Jurisdiction Defects Are Properly Considered When Clearly Established.

Plaintiff argues that personal jurisdiction is "not appropriate" for fraudulent joinder analysis, relying on *Atkinson v. Forest Research Institute, Inc.*, No. 3:15-cv-09302, 2016 U.S. Dist. LEXIS 43713 (S.D.W. Va. Mar. 31, 2016). (ECF No. 8) This misreads *Atkinson*'s holding. *Atkinson* involved a distinct procedural posture: the court was asked whether certain *plaintiffs* could be dismissed based on a *defendant's* lack of jurisdiction, a different inquiry than whether a *defendant* was fraudulently joined. *Id.* at *17-19.

*Atkinson*'s core principle is sound but inapplicable: personal jurisdiction issues that require factual development through discovery are better resolved by state courts after

remand. *Id.* at *19. In the present case, jurisdiction is completely lacking based on established facts. Poldrugo's residence, the locations from which emails were sent, and the address of recipients are all beyond the court's jurisdiction. (*Poldrugo Decl.* ¶¶ 2-3, 9, 11.)

District Court cases within the Fourth Circuit have held that fraudulent joinder may be found where personal jurisdiction is clearly lacking based on undisputed facts. *See County Commn of McDowell Cnty. v. McKesson Corp.*, 263 F. Supp. 3d 639, 649 (S.D.W. Va. 2017) (finding fraudulent joinder where plaintiff had "no possibility of recovery" against non-diverse defendant due to clear personal jurisdiction defect). Such is the case here, and, accordingly, this Court should deny Plaintiff's Motion to Remand.

**C. All Circumstances Giving Rise to the Dispute Occurred in Florida.**

Beyond the absence of personal jurisdiction, the entire dispute is grounded in Florida. In fact, Aery and Cogent Bank have both insisted, successfully, that Florida is the proper forum for this controversy.

In October 2024, the $1.2M judgment was entered in the Eastern District of Virginia against Aery. Talentscale registered the judgment in the Northern District of Florida pursuant to 28 U.S.C. § 1963, and post-judgment proceedings have been pending and "very active" in that court since January 2025. (*Poldrugo Decl.* ¶ 6.) Enforcement of the judgment in Florida has persisted.

Poldrugo's communications were directed to Cogent Bank's Florida officers in response to Cogent's intervention in the Florida garnishment proceedings. (Compl. Ex. A.) When Cogent blocked Talentscale's writ of garnishment against the Cleveland Clinic Foundation, Poldrugo contacted Cogent's management directly, not to harass an out-of-

state resident, but to communicate with a Florida party about ongoing Florida litigation in which Cogent had intervened. *Id.*

It is disingenuous for Plaintiff to argue that Cogent Bank, a major financial institution, cannot be sued in Virginia for its actions but that Poldrugo, an individual with no Virginia contacts, can be sued there for communications directed at that same Florida bank about that same Florida litigation.

**D. The Statements Are Absolutely Privileged Under Virginia Law.**

Even accepting all of Plaintiff's allegations as true, the challenged communications are absolutely privileged under Virginia law. Absolute privilege eliminates the possibility of recovery entirely, rendering fraudulent joinder appropriate.

Under Virginia law, statements made in connection with judicial or quasi-judicial proceedings are absolutely privileged if they are "relevant and pertinent" to the matter under inquiry. *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 267 (2021). This privilege extends broadly to "communications preliminary to a proposed judicial proceeding" and to persons sharing a "corresponding interest in the litigation." *Mansfield v. Bernabei*, 284 Va. 116, 123-26 (2012).

**1. The Communications Are Relevant to Ongoing Litigation**

At the time Poldrugo sent his August 22 and August 26, 2025 emails, active federal litigation was pending in the Northern District of Florida under Case No. 525-mc-00001-TKW-MJF. This litigation directly involved the judgment Talentscale sought to enforce, the priority dispute over Aery's assets, and Cogent Bank's role in blocking collection efforts. (ECF No. 5-1, ¶ 6.)

Cogent Bank had formally intervened in that litigation as a third-party claimant, asserting a security interest in Aery's accounts receivable. (*Id.* ¶ 9.) The emails communicated facts and legal analysis concerning that very litigation, Cogent's intervention, the priority dispute, and whether Cogent's representations to the Florida court were accurate. (Compl. Ex. A.) Therefore, Poldrugo's communications were not merely relevant but central to ongoing judicial proceedings.

### 2. All Parties Shared a Corresponding Interest.

Virginia law extends the privilege to communications between parties to litigation who share a corresponding interest in the proceedings, even when those parties are adverse to one another. *Mansfield*, 284 Va. at 123-26. A party to litigation unquestionably shares a "corresponding interest" in communications about that litigation. *Id.*

Here, Poldrugo was not communicating with an uninvolved third party. He was communicating with Cogent Bank, a party that had actively intervened to block his client's recovery of $921,000 in garnished funds. The communications concerned the accuracy of Cogent's representations to the court, factual discrepancies between Cogent's sworn statements and subsequently produced documents, and potential regulatory violations by a federally regulated bank. Accordingly, Poldrugo's emails fall squarely within Virginia's absolute litigation privilege and cannot, as a matter of law, support any defamation-based claim against him.

### 3. The Privilege Is Not Negated by The Form of Communication.

Plaintiff characterizes Poldrugo's communications as "mass emails" sent to "at least ten senior officers." (Compl. at 2.) This characterization misrepresents the record. Poldrugo

9

emailed senior officers of Cogent Bank, the financial institution that had intervened in the lawsuit and that was itself the subject of Poldrugo's concerns about potential regulatory violations and unfair dealing. (Compl. Ex. A.) Poldrugo sent the communications to persons with authority to address the concerns raised, Cogent's management. *Id.* This is precisely the type of communication Virginia law protects.

Even if the Court concluded that the communications described were published more broadly than strictly necessary, Virginia law recognizes a qualified privilege for communications made in good faith upon subjects in which the communicant has an interest or a duty, if the communication is made to a person with a corresponding interest or duty. Va. Code § 8.01-223.2 (anti-SLAPP statute). As discussed below, these communications were made in good faith concerning matters of public concern, the business practices of a regulated financial institution and potential regulatory violations.

**E. The Complaint Fails to Allege Facts Sufficient to Establish Defamation.**

Setting aside the absolute privilege, Plaintiff failed to allege well-pled facts sufficient to support a defamation claim against Poldrugo under any reasonable interpretation of Virginia law. The Complaint's allegations consist of subjective characterizations and conclusions rather than actionable factual assertions.

**1. Plaintiff Has Not Identified Any Statement of Provable Fact.**

Under Virginia law, "it is well settled that a misrepresentation, the falsity of which will afford ground for an action for damages, must be of an existing fact, and not the mere expression of an opinion." *Mortarino v. Consultant Eng'g Servs.*, 251 Va. 289, 293 (1996). The same principle applies in defamation: statements that cannot be objectively verified as

true or false are constitutionally protected opinion. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). *See also Rolofson v. Fraser*, 81 Va. App. 508, 521 (2024) (holding that statements "relative in nature and depend largely on the speaker's viewpoint" are non-actionable opinion). Here, Plaintiff has not identified any specific statement made by Poldrugo that is provably false.

Poldrugo characterized Aery's conduct as "financial crime" and stated that Aery "defrauded" the court and "misled" the federal judge. (Compl. Ex. A.) These accusations are legal conclusions and characterizations of Aery's conduct, not statements of fact. More importantly, each is grounded in factual assertions regarding Aery's behavior in the underlying litigation that Poldrugo obtained through discovery and court filings:

- Aery obtained a $15 million credit line, later raised to 18 million, while claiming an inability to pay any portion of a $1.2 million judgment; (ECF No. 5-1, ¶ 10)

- Aery's counsel misrepresented to the Florida court that no payments had been made to Cogent Bank in "approximately two months" when in fact Aery had paid Cogent $6.3 million during that period (*Id.*);

- Cogent Bank appeared to conceal $6 million in payments when representing to the court that the credit line was "maxed out" when in fact $3 million in available credit existed (*Id.*).

These are allegations of factual misconduct that Poldrugo supported with documentary evidence obtained through court-ordered discovery.

### 2. Virginia Law Distinguishes Fact from Opinion and Hyperbole.

Even if some of Poldrugo's characterizations could be viewed as hyperbolic, Virginia law recognizes that statements of hyperbole, opinion, or value judgment cannot support defamation claims. *Givago Growth*, 300 Va. at 267; *Hackberry Baptist Church*, 62

11

F. Supp. 3d at 529 (holding that general characterizations and opinions, even if harsh, cannot constitute actionable defamation).

The statements at issue here, that Aery was engaged in "ongoing financial crime," that Aery "defrauded a court," or that conduct was "unlawful," are characterized statements reflecting legal analysis and conclusions about Aery's litigation conduct. They are not provably false statements of fact comparable to false accusations of specific criminal acts.

### 3. Poldrugo's Core Factual Assertions Are Substantially True.

Moreover, the core factual allegations Poldrugo made are substantially true. Discovery in the Florida enforcement proceedings has confirmed each of these allegations. (*Poldrugo Decl.* ¶¶ 10-13.) Truth is a complete defense to defamation. *Goddard v. Protective Life Corp.*, 82 F.Supp.2d 545, 560 (E.D. Va. 2000). Accordingly, if Poldrugo's core factual assertions are substantially true, no defamation can be found.

### F. Multiple Legal Doctrines Foreclose Liability as a Matter of Law.

Even accepting all factual allegations as true, Plaintiff's defamation claims cannot survive because multiple legal doctrines foreclose liability:

1. **Absolute Privilege**: Communications in connection with litigation are absolutely privileged when relevant and pertinent to the matter under inquiry. *Givago Growth*, 300 Va. at 267; *Mansfield*, 284 Va. at 124-27.

2. **Truth Defense**: To the extent Poldrugo's factual assertions can be shown to be false, they are substantially true based on documentary evidence from discovery.

3. **Opinion Protection**: To the extent statements constitute opinion or legal conclusion, they are not actionable under Virginia law. *Hackberry Baptist Church*, 62 F. Supp. 3d at 529.

12

4. **Anti-SLAPP Immunity**: Virginia Code § 8.01-223.2 extends immunity to statements made in good faith on matters of public concern regarding business practices and alleged wrongdoing. The challenged communications clearly fall within this protection.

**G. Suing Poldrugo Individually Demonstrates an Improper Purpose.**

The defamation claims against Poldrugo individually, as opposed to Talentscale, the entity that benefited from Poldrugo's efforts, demonstrate the retaliatory, improper purpose of this litigation. Poldrugo made the communications in his capacity as principal of Talentscale and based on information and legal analysis prepared by counsel. Yet Plaintiff has sued him individually, imposing personal litigation costs and requiring him to defend personally despite that any injury to Aery is derivative of injury by Talentscale. (Compl. at 2.)

This litigation strategy, targeting a creditor's principal individually to increase litigation costs, is characteristic of a Strategic Lawsuit Against Public Participation (SLAPP) suit. The Virginia legislature enacted Virginia Code § 8.01-223.2 precisely to deter such suits and provides immunity against such a declarant.

The root cause of this entire dispute is Aery's refusal to satisfy, or make any payment pursuant to, a $1.2 million federal judgment. Rather than paying what is owed, Aery has filed this defamation action against a creditor exercising lawful collection efforts. Poldrugo should not be forced to travel hundreds of miles from Florida to defend against claims that are factually unsupported, legally foreclosed, and motivated by Aery's desire to punish its creditors.

13

**III. RESOLVING THE MOTION TO DISMISS CONCURRENTLY PROMOTES JUDICIAL ECONOMY.**

Federal courts may consider fraudulent joinder arguments and Rule 12(b)(6) issues in a single proceeding when deciding whether to retain jurisdiction. *See Mayes v. Rapoport*, 198 F.3d 457, 463–64 (4th Cir. 1999). Thus, if the Court concludes that Plaintiff failed to state any viable claim against Poldrugo, there will be no possibility of recovery against him, satisfying the Fourth Circuit's fraudulent joinder standard. This approach promotes judicial economy and eliminates the need to resolve the remand motion separately. *See id.* at 464 (recognizing the competing interests of preserving federal jurisdiction and avoiding parallel federal and state proceedings, and allowing the court to address fraudulent-joinder issues in resolving post-removal jurisdictional questions).

Resolving both motions now will avoid the inefficiency of remanding to state court, only to have the state court dismiss Poldrugo for the same defects Defendants have identified. The Fourth Circuit has endorsed careful, efficiency-oriented handling of fraudulent-joinder and jurisdictional issues in a single federal proceeding. *See Mayes*, 198 F.3d at 463–64.

**CONCLUSION**

For the foregoing reasons, and for the reasons stated in Defendants' Notice of Removal and Memorandum in Support of Motion to Dismiss (ECF Nos. 5-6), Plaintiff's Motion to Remand should be **DENIED**.

Respectfully Submitted,


/s/ Amy Epstein Gluck
Amy Epstein Gluck (VSB No. 38626)
Pierson Ferdinand LLP
601 Pennsylvania Ave., NW, Suite 900
Washington, DC 20004
Telephone: (301) 526-1184
Email: amy.epsteingluck@pierferd.com

*Attorneys for Removing Defendants*
*Talentscale Inc. and Doug Poldrugo*
*(nominal party per fraudulent joinder)*


## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing via CM/ECF on January 22, 2026, which serves

an electronic copy on all counsel and registered users of record.


By:    */s/ Amy Epstein Gluck*
          Amy Epstein Gluck

15