UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

|  |  |
|---|---|
| AERY AVIATION, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>TALENTSCALE, INC.,<br>    and<br><br>DOUGLAS POLDRUGO,<br><br>    Defendants. | Case No. 4:25-cv-00173-RBS-LRL |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, FAILURE
TO STATE A CLAIM, AND VIOLATION OF VIRGINIA'S ANTI-SLAPP STATUTE**

Defendants Talentscale, Inc. ("Talentscale") and Douglas Poldrugo ("Poldrugo," and, collectively, "Defendants"), respectfully submit this Reply Memorandum in Support of their Motion (ECF No. 5-6.)[1]

**I. INTRODUCTION**

Plaintiff Aery Aviation LLC ("Plaintiff") owes Talentscale more than $1.2 million pursuant to a final federal judgment. Rather than pay, Aery filed this defamation lawsuit to punish its judgment creditor for engaging in constitutionally protected judgment enforcement activity. Plaintiff's Opposition to Defendants' Motion (ECF No. 13) fails to rebut any of Defendants' threshold arguments, and, instead, asks this Court to ignore controlling precedent, credit Plaintiff's unsupported assertions, and resolve contested factual question in its favor at the pleading stage.

---

[1] This Motion also incorporates by reference any other applicable arguments made by Defendants in any motion(s) they submitted in response to the Complaint.

Plaintiff's Opposition relies on three untenable propositions: (1) contending that Defendants purposefully availed themselves of Virginia because Plaintiff happens to be headquartered here and because Defendants directed communications to a Florida bank about a Virginia company (2) arguing that this Court cannot consider Defendants' absolute privilege defense on a motion to dismiss because affirmative defenses require factual development; and (3) asserting that its bare allegations of falsity and malice suffice to survive a Rule 12(b)(6) motion.

Plaintiff's Opposition confirms what Defendants' Motion established: this case belongs in Florida, if anywhere.

## II.    ARGUMENT

### A.    Plaintiff's Basis for Personal Jurisdiction Collapses Under *Walden v. Fiore*.

Plaintiff's argument that personal jurisdiction exists here contravenes *Walden v. Fiore*, which squarely holds that a plaintiff's forum connections cannot substitute for a defendant's own forum-directed conduct.

#### 1.  *Plaintiff Misapplies The Calder Test And Ignores How Walden Narrowed It.*

Plaintiff invokes *Calder v. Jones*, 465 U.S. 783 (1984), but ignores *Walden v. Fiore*, 571 U.S. 277 (2014), which substantially limited *Calder* and controls here. The Opposition contends that Defendants "expressly aimed" their conduct at Virginia because Plaintiff is headquartered here and the challenged communications concerned Plaintiff's Virginia operations. (ECF No. 13 at 4-6.) This argument fails.

In *Walden*, the United States Supreme Court clarified that the "effects test" does not confer jurisdiction based solely on a defendant's knowledge that the plaintiff resides in the forum and will feel harm there. *Walden*, 571 U.S. at 286-90. Rather, the defendant's own conduct must "create a substantial connection with the forum State." *Id.* at 284. As the Court expressly held, "the plaintiff

cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. Rather, it is "the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.*

*Calder* itself involved conduct "expressly aimed at California" through a magazine article about a California entertainer that was distributed throughout California with the largest circulation of any state. *Calder*, 465 U.S. at 788-89. In *Calder*, the defendant reporter and editor "wrote and edited an article that they knew would have a potentially devastating impact upon respondent," and critically, "they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the [magazine] has its largest circulation." *Calder*, 465 U.S. at 789-90. By contrast, the *Walden* Court held that a Georgia law enforcement officer who seized funds from Nevada residents in Georgia was not subject to jurisdiction in Nevada, even though he knew his conduct would harm the plaintiffs there.  (ECF No. 6 at 7.)

Here, the facts in the instant case mirror *Walden*, not *Calder.* Poldrugo sent the emails were from Florida about litigation pending in Florida. He attached legal analysis prepared by Florida counsel. Every material event occurred in Florida. (ECF No. 6 at 5-6.) Virginia's sole connection to this dispute is that Aery chose to domicile here—and that is precisely the type of forum connection that *Walden* held constitutionally insufficient. *Walden*, 571 U.S. at 285. Indeed, the Court in *Walden* emphasized, "[r]egardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290.

Plaintiff's assertion that the challenged statements were "targeted accusations against a Virginia company" (ECF No. 13 at 5) proves nothing. Plaintiff's attempt to create Virginia

contacts by pointing to the underlying judgment and a prior commercial relationship is insufficient – such contacts are irrelevant. The personal jurisdiction inquiry focuses on "the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284. The relevant litigation is this defamation action, ***not*** the prior contract dispute. Defendants' participation in the earlier case does not confer jurisdiction over a tort claim arising from enforcement activity conducted entirely in Florida.

> 2. *The Underlying Commercial Relationship Cannot Supply Jurisdiction for a Defamation Claim.*

Plaintiff's fundamental argument, that Defendants' prior business relationship with Aery and the Virginia judgment create jurisdiction, reflects a misunderstanding of the specific jurisdiction inquiry. Specific jurisdiction requires that "the plaintiff's claims arise out of" the defendant's forum-related activities. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

Plaintiff's defamation claim does not arise out of Talentscale's provision of staffing services or the confirmation of the arbitration award. Those contacts gave rise to the underlying contract dispute, which was resolved years ago through arbitration and judgment. The defamation claim arises out of emails Poldrugo sent in August 2025 from Florida to Florida recipients about Florida enforcement proceedings. The prior Virginia contacts are legally irrelevant to this distinct claim.

Plaintiff's attempt to characterize the challenged communications as "derivative of" the Virginia judgment does not change this analysis. Every post-judgment collection effort is derivative of the underlying judgment in the sense that the judgment is a predicate. But a judgment creditor who domesticates and enforces a judgment in another state does not thereby subject itself to personal jurisdiction in the original forum for torts allegedly committed during enforcement. If

Plaintiff's theory were correct, any judgment creditor could be haled into the original forum for any conduct tangentially related to collection, regardless of where the conduct occurred. That would gut the jurisdictional requirements imposed by *Walden* and the Due Process Clause.

### 3. Plaintiff's Reliance On LinkedIn Posts Fail.

Plaintiff introduces the concept that LinkedIn posts by Poldrugo, which are not part of the Complaint but will be, somehow confer jurisdiction. (ECF No. 13 at 6-7; 13-1 at Exs. 1-2.)

This argument is procedurally deficient for multiple reasons. First, as *Walden* instructs, the jurisdictional inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). This analysis is confined to the claims pleaded, not speculative future modifications.

Second, even if the LinkedIn posts were properly before the Court, they would not establish purposeful availment sufficient to confer Virginia jurisdiction. A post on a national social media platform is not "expressly aimed" at Virginia merely because the subject is a Virginia company. The Fourth Circuit has rejected the theory that Internet postings create jurisdiction wherever a plaintiff might access them. *ALS Scan*, 293 F.3d at 714 (requiring that defendant "directs electronic activity into the State" "with the manifested intent of engaging in business or other interactions within the State"). Poldrugo's LinkedIn account is not directed at Virginia, does not transact business in Virginia, and does not create Virginia contacts merely because its content mentions a Virginia company.

Third, jurisdiction cannot be retroactively established by post-complaint conduct. That would undermine the entire framework of specific jurisdiction, which looks to the defendant's contacts at the time the suit was filed. The Court should decide the pending motion based on the operative pleading, not hypothetical future claims.

### B.    Venue Is Improper In Virginia Under 28 U.S.C. § 1391(b).

Plaintiff does not dispute that neither Defendant resides in Virginia. Accordingly, Plaintiff must establish that "a substantial part of the events or omissions giving rise to the claim occurred" here. 28 U.S.C. § 1391(b)(2). Plaintiff cannot make that showing.

Plaintiff argues that 28 U.S.C. § 1391 does not apply to removed cases, citing *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663 (1953). That argument is a non sequitur. *Polizzi* addressed whether a removed case could be transferred under then-applicable venue statutes; it did not hold that venue challenges are unavailable in removed cases. *Id.*

Next, Plaintiff argues that harm occurred in Virginia and that harm location is relevant to venue. (ECF No. 13 at 11.) That is not the test. The venue statute asks where the "events" occurred, not where the plaintiff claims to have experienced injury. The Fourth Circuit addressed this issue in *Carefirst of Maryland*, holding that venue was proper where the defendant's infringing conduct occurred, not where the plaintiff experienced competitive harm. 334 F.3d 390, 395–96. The defendant's own conduct must create the forum nexus, *Id.* at 397-402, not where there effects of such conduct were felt.

*Walden* reinforced this principle with unmistakable clarity. The Supreme Court held: "Regardless of where a plaintiff lives or works, an injury resulting from allegedly tortious conduct is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum state." *Walden*, 571 U.S. at 286. And critically, "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendants conduct connects him to the forum in a meaningful way." *Id.*

Here, every event giving rise to Plaintiff's claim occurred in Florida. Poldrugo drafted and sent the emails from Florida. The recipients worked at a Florida bank. The emails concerned

litigation pending in Florida. The only Virginia connection is that Aery happens to be domiciled here—and *Carefirst* makes clear that the plaintiff's location does not establish venue.

Plaintiff also argues that Defendants' request for transfer is "duplicitous" because Defendants removed the case to this Court. (ECF No. 13 at 10-11.) Removal does not concede venue. A defendant who removes under 28 U.S.C. § 1441 may simultaneously challenge venue under 28 U.S.C. § 1406. The procedural rules permit both. The emails specifically addressed the Northern District of Florida enforcement proceedings, Cogent Bank's intervention in Florida garnishment proceedings, the Cleveland Clinic accounts receivable litigation pending in Florida, and regulatory complaints filed with federal and Florida state agencies. They were entirely Florida-focused. If Defendants intended to harm Plaintiff's Virginia reputation, they would have sent these communications to Virginia entities, Plaintiff's Virginia employees, Virginia business partners, Virginia financial institutions. Instead, they sent private emails to a Florida bank about Florida litigation.

Although venue may be proper under 28 U.S.C. § 1441(a), proper venue does not cure the absence of personal jurisdiction. "The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). Personal jurisdiction "flows not from Art. III, but from the Due Process Clause" and "represents a restriction on judicial power ... as a matter of individual liberty." *Id.* at 702. Because personal jurisdiction is a constitutional requirement rooted in due process, not a mere procedural technicality like venue, the Court must dismiss if Defendants lack minimum contacts with Virginia, regardless of whether venue is technically proper under the removal statute. *See also Walden v. Fiore*, 571 U.S. 277, 283 n.5 (2014) (resolving case on personal jurisdiction grounds without reaching venue).

**C.      Dismissal Is the Appropriate Remedy.**

Under 28 U.S.C. § 1406(a), when venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The Fourth Circuit has held that a district court does not abuse its discretion when it denies transfer under § 1406(a) where "the plaintiff's attorney could reasonably have foreseen that the forum in which he/she filed was improper." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201-02 (4th Cir. 1993).

Here, dismissal is warranted. Plaintiff's counsel knew or should have known that venue was improper. The Complaint alleges that Defendants sent emails from Florida to a Florida bank about Florida litigation. No reasonable attorney could conclude that a "substantial part" of those events occurred in Virginia. The choice to file here was not inadvertent; it was strategic forum shopping designed to maximize litigation burden on Defendants located in Florida and Nevada. Alternatively, if the Court determines that the interests of justice favor transfer, the appropriate destination is the Northern District of Florida, where Poldrugo resides and where all witnesses and evidence are located.

**D.      The Complaint Fails to State a Claim: Absolute Privilege, Opinion, and Substantial Truth Dispose of the Complaint.**

*1.   The Absolute Privilege Applies On The Face of the Pleading.*

Plaintiff concedes the existence of Virginia's absolute litigation privilege and contends that the Court cannot consider Defendants' absolute privilege defense at the motion to dismiss stage because affirmative defenses require factual development. (ECF. No. 13 at 7; 12-14.) Plaintiff's position is inconsistent with Virginia law.

Virginia courts routinely resolve privilege questions as threshold matters of law. The Supreme Court of Virginia has held that the court acts as "gatekeeper" in defamation cases,

deciding "as a threshold matter whether challenged statements are capable of defamatory meaning and whether they are protected by privilege." (ECF 6 at 17 citing *Schaecher v. Bouffault*, 290 Va. 83, 106–07 (2015). The privilege inquiry turns on whether the challenged statements relate to judicial proceedings and are relevant and pertinent" to the matter under inquiry, which is a legal question. (ECF No. 6 at 18; *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 267 (2021)). Indeed, in *Givago Growth*, the Supreme Court of Virginia reviewed the circuit court's privilege determination de novo. *Givago Growth*, 300 Va. at 264.

Courts routinely resolve privilege issues on motions to dismiss when, as here, the privilege is apparent from the face of the complaint and its exhibits. The Complaint itself alleges that the emails were sent "regarding the Northern District of Florida litigation" (Compl. ¶ 19), that they attached "a detailed legal memorandum prepared by Talentscale's Florida counsel" (*id.*), and that they concerned the garnishment proceedings and Cogent's intervention (*id.*). The emails, attached as exhibits, explicitly reference "Case No. 5:25-mc-00001-TKW-MJF" and discuss the enforcement proceedings. These facts, taken as true, establish that the communications were made in connection with pending judicial proceedings. Virginia law explicitly extends absolute privilege to communications "preliminary to a proposed judicial proceeding" when the proceeding is "contemplated in good faith and under serious consideration" and the communication is disclosed to interested persons. *Mansfield v. Bernabei*, 284 Va. 116, 125–26 (2012). The privilege is not limited to formal court filings. *See Darnell v. Davis*, 190 Va. 701, 707–08 (1950) (privilege includes "every proceeding before a competent court or magistrate in the due course of law or the administration of justice which is to result in any determination or action of such court or officer").

Plaintiff argues that Cogent Bank was not a "party" to the litigation because the underlying judgment runs against Aery, not Cogent. (ECF No. 13 at 12-13.) This argument conflates the

judgment debtor with the garnishment proceedings. Cogent Bank intervened in the Florida garnishment proceedings and asserted a secured interest in funds that Talentscale sought to garnish. (Poldrugo Decl. ¶ 9; ECF No. 5-1.) The emails directly addressed matters at issue in that litigation: Cogent's lien priority, Plaintiff's financial condition, and the enforceability of Talentscale's judgment. By intervening, Cogent became a party. Communications with a party to litigation about that litigation fall squarely within the privilege. *Mansfield v. Bernabei*, 284 Va. 116, 126 (2012).

Further, Plaintiff's assertion that the lien priority dispute "had already been resolved" by August 2025 (ECF No. 13 at 14) is both factually wrong and legally irrelevant. It misconceives the scope of the privilege. Virginia's absolute privilege extends to communications "preliminary to a proposed judicial proceeding" and to statements made while litigation is "contemplated in good faith." *Mansfield*, 284 Va. at 124–27. The enforcement action remained pending in the Northern District of Florida. The privilege does not evaporate because a single disputed motion was decided; it applies throughout the pendency of the litigation.

The garnishment was dissolved in May 2025, but the enforcement proceedings remained active. (ECF No. 6 at 22.) Talentscale continued to pursue collection of its judgment. (*Id.* at 25-26.) Cogent continued to assert priority over Plaintiff's receivables. (*Id.* at 19.) The August 2025 communications addressed Cogent's ongoing role in obstructing Talentscale's collection efforts. *Id.* But even if the specific garnishment had concluded, the absolute privilege extends to communications "preliminary to a proposed judicial proceeding" when litigation is contemplated in good faith. (ECF No. 6 at 7.) Talentscale's communications contemplated further collection efforts and potential claims against Cogent.

Plaintiff relies on *Lokhova v. Halper*, 30 F.4th 349 (4th Cir. 2022), for the proposition that privilege questions should not be resolved "on the basis of such a limited record." (ECF No. 13 at 14.) *Lokhova* involved communications whose connection to litigation was contested and unclear from the pleadings. Here, by contrast, the Complaint and its exhibits establish the connection: the emails reference the Florida enforcement proceedings by case number, attach counsel's legal memorandum, and were sent to a party in those proceedings. No factual development is required to determine that communications about pending litigation, sent to a party in that litigation, relate to the judicial proceedings.

2. *The Statements Are Non-Actionable Expressions of Opinion.*

Even assuming arguendo that absolute privilege did not apply, the challenged statements are non-actionable expressions of opinion based on disclosed facts. Whether a statement is one of fact or opinion is a question of law for the court. *Schaecher v. Bouffault*, 290 Va. 83, 103 (2015). "Statements that include a factual basis for their conclusions are considered opinions and are not actionable as defamation" because the full context "unambiguously communicates to the listener that an opinion is being expressed." *Id.* at 106. Plaintiff cites no authority for the proposition that this determination requires fact-finding.

Here, the emails at issue disclosed the factual basis for Poldrugo's characterizations. The August 22 email identified the federal judgment and case number, referenced "Discovery" as the source of information, attached counsel's detailed memorandum analyzing the garnishment proceedings, cited specific loan documents and court filings, and described the procedural history. Against that disclosed factual background, Poldrugo characterized the conduct as "fraud," "unlawful," and a "scheme." Those characterizations are classic expressions of opinion—legal conclusions drawn from underlying facts that were themselves disclosed.

Against this disclosed factual background, Defendants characterized the conduct as "fraud," "unlawful," and part of a "scheme." (ECF No. 13 at 14-16.) These are classic legal conclusions, expressions of opinion about the significance of disclosed facts, not independent assertions of fact. The Fourth Circuit has held that characterizations of conduct as "fraud" are non-actionable opinion where, as here, the factual basis for the characterization is disclosed. *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184-85 (4th Cir. 1998). When "the bases for the ... conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related." *Id.* at 184 (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993)).

Plaintiff focuses on the statement that Plaintiff "defrauded a court." But that characterization was based on disclosed facts: Cogent's counsel represented to the Florida court that Plaintiff's credit line was $15 million and "maxed out," when discovery later revealed it had been increased to $18 million with $3 million in available credit. (ECF No. 13 at ¶ 10.) Whether that conduct constitutes "fraud on the court" is a legal conclusion, not a factual assertion. Poldrugo disclosed the facts and stated his conclusion. That is protected opinion. Under the standard established in *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 185 (4th Cir. 1998), characterizations of conduct as "fraud" are non-actionable opinion when the underlying facts are disclosed. Here, Poldrugo did exactly that, providing the factual predicate for his legal characterization.

Plaintiff argues that the statements were false, but it identifies no false fact. (ECF No. 13 at 8.) Instead, it offers conclusory denials: "These statements are categorically false." But under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a plaintiff cannot survive a motion to dismiss with bare legal conclusions. Plaintiff must identify a specific false factual assertion. It does not.

12

Moreover, Aery's citation to *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1 (1954), does not advance its argument. *Carwile* involved a newspaper article asserting as fact that the plaintiff had committed a crime. Here, Poldrugo disclosed the factual predicate, the judgment, the garnishment history, the discovery responses, the loan documents, and drew legal conclusions from those disclosed facts. Whether particular conduct constitutes "fraud" is a legal determination, not an assertion of historical fact. *See Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 185 (4th Cir. 1998).

### 3. The Substantial Truth Doctrine Applies.

Under the substantial truth doctrine, a statement "is not considered false" unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517, 111 S. Ct. 2419, 115 L. Ed. 2d 447 (1991); *see Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 185 (4th Cir. 1998) (affirming dismissal where alleged inaccuracy would not have altered effect on reader).

The main points of Defendants' communications were that:

a)  Plaintiff owes Talentscale a substantial unpaid judgment (true)

b)  Plaintiff claims financial distress while maintaining access to significant credit (true)

c)  Cogent intervened in enforcement proceedings to block collection (true)

d)  Potential regulatory issues exist regarding the lending arrangement (true)

Each of these is true as a matter of undisputed fact. Plaintiff offers no contrary evidence. Instead, it characterizes Defendants' statements as "categorically false" without identifying a single false statement of fact. That conclusory approach does not survive Rule 12(b)(6) review.

### 4. Plaintiff's Bare Denials Cannot Overcome Substantial Truth.

13

Plaintiff argues that the Court "must accept as true Aery's allegations that the statements made by Poldrugo . . . are categorically false." (ECF No 13 at 16.) Plaintiff misunderstands the Rule 12(b)(6) standard.

In *Ashcroft v. Iqbal*, the U.S. Supreme Court held that courts are "not bound to accept as true a legal conclusion couched as a factual allegation." 556 U.S. 662, 678 (2009). The Complaint's assertion that the statements "are categorically false" is a legal conclusion, not a factual allegation. To state a claim, Plaintiff must identify which facts are false and allege contrary facts. Plaintiff has done neither.

The core facts underlying the challenged communications remain undisputed: this Court entered a judgment of more than $1.1 million against Aery; Aery has not paid; Aery maintains a substantial credit facility with Cogent Bank; Cogent intervened in the garnishment proceedings; and Cogent moved to dissolve Talentscale's writ.  The Complaint does not allege that any of these underlying facts are false. The characterizations Plaintiff challenges—calling the conduct "fraud" or an "unlawful relationship"—are not factual assertions subject to truth or falsity; they are legal conclusions.

### D.      Actual Malice Cannot Be Pled at the Motion to Dismiss Stage.

Plaintiff alleges: "Defendants' accusations were made without reasonable basis, in reckless disregard of the truth, and with actual malice." (Compl. ¶ 32.) Plaintiff argues that its conclusory allegations of malice suffice at the pleading stage. They do not.

To overcome any applicable privilege, Plaintiff must plead facts establishing "actual malice"—that Defendants made the statements "with knowledge of falsity or reckless disregard for the truth." *Great Coastal Express, Inc. v. Ellington*, 230 Va. 142, 148–49 (1985). Actual malice requires a showing that the defendant "in fact entertained serious doubts as to the truth of his

14

publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Reckless disregard "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *Id.* Rather, it requires a "high degree of awareness of ... probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964). Importantly, "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989).

Here, the Complaint's malice allegation is entirely conclusory: "Defendants' accusations were made without reasonable basis, in reckless disregard of the truth, and with actual malice." That is a legal conclusion, not a factual allegation. *Iqbal* forbids crediting such conclusions. *Iqbal*, 556 U.S. at 678.

Here, the facts alleged in the Complaint and its exhibits affirmatively negate malice. The emails attached to the Complaint disclose that Poldrugo based his statements on a federal judgment entered by this Court, discovery responses obtained in the Florida proceedings, counsel's legal analysis of the garnishment disputes, and Cogent Bank's own loan documents and payment records. Statements based on court filings, discovery responses, and advice of counsel cannot constitute actual malice. (ECF No. 6 at 26; *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989).)

Further, Plaintiff points to language in the emails expressing Poldrugo's frustration and intent to publicize the dispute. (ECF No. 13 at 17-18.) Frustration and aggressive litigation tactics do not constitute actual malice. Actual malice requires knowledge of falsity or reckless disregard for the truth—not ill will or improper motive. *See Bose Corp. v. Consumers Union*, 466 U.S. 485,

15

511 (1984). Poldrugo drew legal conclusions from documented facts and expressly disclosed his sources. That is the opposite of actual malice.

**E.      Virginia's Anti-SLAPP Statute Independently Requires Dismissal and Bars Recovery.**

Plaintiff argues that its allegations of falsity and malice preclude dismissal under Virginia's anti-SLAPP statute. (ECF No. 13 at 18.)   Plaintiff is wrong. Virginia Code § 8.01-223.2(B) provides immunity to a speaker unless the plaintiff proves that the defendant "knew or should have known" the statements "were false or were made with reckless disregard for whether they were false." *Id.*

As detailed above, Plaintiff cannot satisfy this standard. The statements pled were based on official court filings, a federal judgment from this Court, discovery responses from Cogent Bank, loan documents and financial records, and legal analysis by Talentscale's counsel. Defendants did not know, and should not have known, that statements based on such evidence were false. Under *Walden* and *Calder*, the focus must be on Defendants' conduct and what they actually knew, not on whether Plaintiff disagrees with their legal conclusions.

Plaintiff's reliance on *Brooks-Buck v. Wahlstrom*, 921 S.E.2d 223, 2025 Va. LEXIS 50 (Va. 2025) (ECF No. 13 at 18), fails for multiple reasons. First, *Brooks-Buck* involved qualitatively different allegations and clarified the scope of legislative immunity for board members, which is wholly distinct from the facts here. There, the plaintiff pleaded that defendants made "'baseless accusations'" motivated by "'ill will,'" "'extreme animosity,'" and "'retaliation'", all of which are factual characterizations describing a hostile subjective state unrelated to any legitimate purpose. *Id.* at 231. Second, in *Brooks-Buck*, the complaint alleged specific facts supporting an inference that the defendant knew her statements were false. By contrast, here, in its Opposition, Plaintiff merely recited the legal standard for defeating statutory immunity. Plaintiff pleaded bare legal

16

conclusions, not factual allegations, and asked the Court to find they were made with malice. The Complaint does not allege any facts suggesting that Poldrugo doubted the truth of his statements or fabricated information. To the contrary, the emails themselves demonstrate reliance on court filings, discovery, counsel's analysis, and bank records.

Specifically, as set forth in Defendants Motion (ECF No. 6 at 25), the timing, forum selection, and damages demand paint a clear picture of retaliatory litigation:

- Plaintiff received Defendants' August 22–26, 2025 emails regarding the Florida judgment enforcement (*id.* at 17-18);
- Plaintiff filed this defamation action three months later in Virginia, far from Defendants' homes (Florida and Nevada) and counsel, on November 26, 2025 (*id.* at 6);
- Plaintiff seeks $1,350,000 in damages, more than the $1.2 million judgment it refuses to pay (*id.* at 21, 24, 25);
- Plaintiff names Poldrugo as a defendant despite knowing he had no Virginia contacts (*id.* at 11.)

This lawsuit fits the paradigm of a SLAPP suit. A judgment debtor is suing its judgment creditor. Plaintiff filed in Virginia, far from Defendants' homes and counsel, despite knowing that all relevant conduct occurred in Florida. Plaintiff seeks $1.35 million in damages—more than the judgment it refuses to pay. The timing, forum selection, and damages demand confirm that this lawsuit is intended to impose litigation costs on Defendants and deter further collection activity.

The Court should dismiss this case under Virginia's anti-SLAPP statute and award Defendants their reasonable attorneys' fees, as authorized by Virginia Code § 8.01-223.2(C).

### F.      Plaintiff Fails To Address The Fraudulent Joinder of Poldrugo.

Plaintiff's Opposition does not address the subject matter jurisdiction defect that it fraudulently joined Poldrugo in this lawsuit. Accordingly, the Court may treat that argument as conceded. *Intercarrier Commc'ns, LLC v. Kik Interactive, Inc.*, 2013 U.S. Dist. LEXIS 112715, at *3 (E.D. Va. Aug. 9, 2013).

### III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss with prejudice on the grounds of lack of personal jurisdiction, improper venue, failure to state a claim, and under Virginia's anti-SLAPP statute, Va. Code § 8.01-223.2. Defendants further request an award of reasonable attorneys' fees and costs under § 8.01-223.2(C).

Respectfully Submitted,

/s/ Amy Epstein Gluck
Amy Epstein Gluck (VSB No. 38626)
Pierson Ferdinand LLP
601 Pennsylvania Ave., NW, Suite 900
Washington, DC 20004
Telephone: (301) 526-1184
Email: amy.epsteingluck@pierferd.com

*Attorneys for Removing Defendants*
*Talentscale Inc. and Doug Poldrugo*
*(nominal party per fraudulent joinder)*

### CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing via CM/ECF on January 26, 2026, which serves an electronic copy on all counsel and registered users of record.

By:   */s/ Amy Epstein Gluck*
      Amy Epstein Gluck

18